# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

PETER REISING, et al.,
    Plaintiffs,

vs.

THE TORO COMPANY,
    Defendant.

Case No. 1:17-cv-00431
Dlott, J.
Litkovitz, M.J.

**ORDER**

On July 3, 2018, the Court held an informal telephone discovery conference on whether

the discovery plaintiffs seek – information on all Zero Radius Turn (ZRT) lawn mowers

manufactured by Toro, including commercial models, between 1975 and June 28, 2015 – is

relevant and discoverable. The Court ordered the parties to submit briefs on the scope of

discovery and this matter is now ripe for review. (See Docs. 23, 24, 25, 26).

## I. Background

Plaintiffs' complaint alleges the following. On June 28, 2015, Peter Reising suffered

permanent injuries when his Toro Z5035 TimeCutter lawn tractor rolled over while he was

operating it at his residence. (Doc. 4, ¶ 4). As Mr. Reising operated the lawn tractor, its plastic

deflector struck a decorative wall, causing the lawn tractor to rotate so that the rear tires moved

over the edge of a steep slope. The lawn tractor flipped over, front over rear, throwing Mr.

Reising down the embankment with the tractor landing on top of him. (*Id.*, ¶ 5). Mr. Reising

suffered a spinal cord injury, causing paraplegia. (*Id.*, ¶ 7). Plaintiffs allege that the lawn tractor

was designed, manufactured and sold by Toro in a defective manner in that it was unreasonably

dangerous, hazardous, and un-crashworthy because, among other reasons, the lawn tractor lacked

a roll bar and a seat belt, also known as a rollover protective system (ROPS) or safety frame

system. (*Id.*, ¶ 6). Plaintiffs allege claims for strict liability under Ohio Rev. Code § 2307 et seq., punitive damages, and loss of consortium and value of home health care.

## II. Scope of discovery

Toro manufactured the TimeCutter Z5035 (model #74376), the model at issue in this case, from 2010 to 2011. (Doc. 24, Ex. 1, Affidavit of John Hurst, ¶ 5)[1]. The Z5035 is a 552-pound residential ZRT lawn mower, utilizing a 24 hp Kawasaki engine, and containing a 3-gallon fuel tank. (*Id.* at ¶ 10, Ex. C). Its top speed is 7.0 mph. (*Id.*). It does not have a Rollover Protection System ("ROPS"). (*Id.* at ¶ 14). The Z5035 was designed and manufactured to comply with the American National Standard Institute (ANSI) B71.1-2003 (Consumer Turf Care) standard entitled "Consumer Turf Care Equipment – Walk Behind Mowers and Ride-on Machines with Mowers – Safety Specifications." (*Id.* at ¶ 7).

Plaintiffs issued discovery requests to Toro seeking design documents, accident history, purchase documents, communications with dealers, and other information related to *all* ZRT lawn mowers manufactured by Toro. Toro disagreed with the scope of plaintiffs' discovery request and proposed to limit the model scope of discoverable information to 67 different models of ZRT lawn mowers with steering levers, certified to the ANSI B71.1 standard, and manufactured between 2000 and June 28, 2015, the date of plaintiff's accident. Plaintiffs responded by requesting that Toro include all models of Toro ZRT lawn mowers, including commercial models, manufactured between 1975 and June 28, 2015, which would encompass over 450 different models. (*Id.* at ¶ 16). The parties were unable to resolve the dispute over the scope of discovery and appeared before the undersigned for an informal discovery conference. Following the conference and at the Court's request, the parties submitted briefs on the scope of

---

[1] Mr. Hurst is the Director of Engineering for the Residential and Landscape Contractor Division at Toro.

discovery.

**A. Governing standards**

Fed. R. Civ. P. 26 governs the scope of discovery. Rule 26 provides in relevant part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). If a party objects to the relevance of information sought in discovery, "the party seeking discovery must demonstrate that the requests are relevant to the claims or defenses in the pending action . . . . If that party demonstrates relevancy, the party resisting discovery bears the burden of demonstrating why the request is unduly burdensome or otherwise not discoverable under the Federal Rules." *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008) (citing *Allen v. Howmedica Leibinger*, 190 F.R.D. 518, 522 (W.D. Tenn. 1999)). *See also William Powell Co. v. Nat'l Indem. Co.*, No. 1:14-cv-00807, 2017 WL 1326504, at *5 (S.D. Ohio Apr. 11, 2017) (and cases cited therein), *aff'd sub nom. William Powell Co. v. OneBeacon Ins. Co.*, 2017 WL 3927525 (S.D. Ohio June 21, 2017), *and modified on reconsideration*, 2017 WL 4315059 (S.D. Ohio Sept. 26, 2017). Thus, if plaintiffs demonstrate the relevancy of the information they seek, the burden shifts to Toro to demonstrate "why the request is unduly burdensome or otherwise not discoverable." *First Horizon Natl. Corp. v. Houston Cas. Co.*, No. 2:15-cv-2235, 2016 WL 5869580, at *4 (W.D. Tenn. Oct. 5, 2016) (quoting *Anderson*, 251 F.R.D. at 310). *See also Gazvoda v. Sec. of Homeland Sec.*, 15-cv-14099, 2017 WL 168159, at *4 (E.D. Mich. Jan. 17, 2017). The Advisory Committee Note to Rule 26(b)(1) addresses the parties' burdens under Rule 26, as amended in 2015, as follows:

> Restoring the proportionality calculation to Rule 26(b)(1) does not . . . place on the party seeking discovery the burden of addressing all proportionality considerations

. . . . Nor is the change intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional. . . . If the parties continue to disagree, the discovery dispute could be brought before the court and the parties' responsibilities would remain as they have been since 1983. A party claiming undue burden or expense ordinarily has far better information -- perhaps the only information -- with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them.

The Advisory Committee Note (2015) to Fed. R. Civ. P. 26(b)(1).

### B. Resolution

"In a products liability case, the plaintiff must prove, by a preponderance of the evidence, that (1) a defect existed in the product manufactured and sold by the defendant; (2) the defect existed at the time the product left the hands of the defendant; and (3) the defect was the proximate cause of the plaintiff's injuries or loss." *McGrath v. Gen. Motors Corp.*, 26 F. App'x 506, 511 (6th Cir. 2002) (citing *State Farm Fire & Cas. Co. v. Chrysler Corp.*, 37 Ohio St.3d 1, 5-6, 523 N.E.2d 489 (1988)).

In this case, plaintiffs allege that the essential design defect is Toro's failure to equip the Z5035 TimeCutter mower with a rollover protection system that protects the operator from severe injury or death during a rollover. Plaintiffs assert that Toro's historical knowledge of the design and development of rollover protection systems is relevant to what Toro knew about such systems and when they knew it. They contend that such prior-knowledge information is relevant to show that Toro's product was defective in design or formulation under the factors set forth in Ohio Rev. Code § 2307.75(B).[2] Plaintiffs further contend that the discovery they seek is relevant

---

[2] "The foreseeable risks associated with the design or formulation of a product shall be determined by considering factors including, but not limited to, the following: (1) **The nature and magnitude of the risks of harm** associated with that design or formulation in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product; (2) The likely awareness of product users, whether based on warnings, general knowledge, or otherwise, of those risks of harm; (3) **The likelihood that the design or formulation would cause harm in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;** (4) The extent to which that design or formulation conformed to any applicable **public or private product standard that was in**

to their punitive damages claim as they are required to prove that Toro "acted with 'a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.'" (Doc. 23 at 3, quoting *Preston v. Murty*, 23 Ohio St.3d 334 (1987)).

Plaintiffs assert that Toro knew, or should have known, as early as the 1960s and 1970s that a ROPS should be installed on all ZTR mowers based on published industry standards that recognize all tractors are subject to rollover and that the engineering standards were designed to apply to both agricultural and industrial tractors, regardless of any difference in their design. (Doc. 23 at 3, citing Berry Report, Ex. 3). Plaintiffs contend that Toro improperly seeks to limit discovery to TimeCutter ZTR mowers from its residentially marketed line, thereby excluding any ZTR mowers from its commercially marketed line. Plaintiffs allege that because Toro's commercially marketed line of ZTR mowers is "substantially similar" to its residentially marketed line on the "issue of the efficacy of rollover protection to the operator," discovery should not be limited solely to the residential line of mowers. Plaintiffs allege that Toro's experience and data regarding injuries on any model of ZTR mowers that is not equipped with a ROPS may show knowledge of this danger and the crashworthiness of the mower in the event of a rollover. Plaintiffs argue that a ROPS protects operators of mowers regardless of the cause of a rollover, and the differences in mower characteristics or alternative ANSI standards based on mower size and weight do not change this fact.

Toro contends there are significant differences in design between commercial and residential ZRT mowers that render any commercial ZRT mower too dissimilar from Toro's residential mowers to be relevant and discoverable in this case. Toro alleges that many factors

---

**effect when the product left the control of its manufacturer**; (5) The extent to which that design or formulation is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner." (Doc. 23, citing Ohio Rev. Code § 2307.75(B) (emphasis added by plaintiffs)).

influence whether to include a ROPS on a mower, including the size, weight, center of gravity, and intended use of the mower. (Doc. 24, Ex. 1, Hurst Aff. at ¶ 12). Toro asserts the Z5035 weighs 552 pounds; in contrast, Toro's commercial ZRT mowers may weigh up to 1,710 pounds. (*Id.* at ¶ 13). Commercial ZRT mowers are designed with one or two large fuel tanks to accommodate the generally longer workday of commercial users, while the Z5035 has a single, smaller fuel tank. Commercial mowers are designed for greater durability than the Z5035 ZRT mower and have larger tires, more engine horsepower, and larger overall dimensions. (*Id.*). The Z5035 is smaller and has a lighter-weight frame and lighter gauge steel decking. Mr. Hurst, Toro's Director of Engineering for the Residential and Landscape Contractor Division, alleges that the "lighter weight TimeCutter Z5035 is less likely to cause serious injury in the event of a rollover than a heavier, Commercial ZRT." (*Id.*). In addition, Toro alleges that inclusion of a ROPS on the Z5035 may actually increase the likelihood of rollover hazards as a ROPS would constitute a greater percentage of the total weight of the mower and raise the center of gravity, thereby potentially reducing hillside traction, controllability, and stability. (*Id.* at ¶ 14). In contrast, the commercial ZRT mowers, which are larger, heavier, and more durable, are "not as dramatically impacted by this shift in center of gravity and therefore can include a ROPS with fewer other design changes." (*Id.*). Toro further contends that residential ZRT mowers are governed by different safety standards than those for commercial mowers. The version of ANSI B71.1 in effect at the time of the Z5035's manufacture does not require a ROPS for this particular machine. (*Id.*, Ex. A, at ¶ 19.1.3.1). ANSI B71.1 is not intended to apply to commercial products utilized by professional operators, which are governed by ANSI B71.4-2004, the safety standards for commercial mowers designed and manufactured for use exclusively in the commercial context. (Doc. 24, Hurst Aff. at ¶¶ 10-11). Finally, Toro contends

that residential mowers like the Z5035 and commercial ZRT mowers are intended for different users. Consumer operators are typically familiar with the potential hazards such as steep slopes or drop-offs of their own lawns and, therefore, have the capability and knowledge to assess and avoid such hazards. In contrast, commercial operators frequently mow unfamiliar properties under time constraints and unfamiliar conditions without prior knowledge of potential hazards. (*Id.* at ¶ 15). Toro alleges that the intended use for a mower has a direct bearing on whether it is appropriate to include a ROPS on the mower, and information and documents relating to commercial mowers, which are intended for different uses than residential mowers, are not relevant to plaintiffs' claims that the subject residential mower was defective.

In determining the question of relevancy of other models in products liability actions, courts generally permit "discovery of similar, if not identical [product] models." *Tolstih v. L.G. Elecs., USA, Inc.*, No. 2:07-cv-582, 2009 WL 439564, at *5 (S.D. Ohio Feb. 20, 2009) (quoting *Holfer v. Mack Trucks, Inc.*, 981 F.2d 377, 380-81 (8th Cir. 1992)). Only those models which are "substantially similar" to the product at issue are relevant, and "the discoverability of different models turns on whether those models share with the accident-causing model those characteristics pertinent to the legal issues raised in the litigation." *Kroft v. Broan-Nutone, LLC*, No. 2:11-cv-388, 2012 WL 13026969, at *2 (S.D. Ohio Apr. 5, 2012) (quoting *Tolstih*, 2009 WL 439564, at *5 (in turn quoting *Fine v. Facet Aerospace Products Co.*, 133 F.R.D. 439, 441 (S.D.N.Y. 1990)). *See also Croskey v. BMW of North America, Inc.*, 532 F.3d 511, 518 (6th Cir. 2008) (defining "substantial similarity" as meaning "that the accidents must have occurred under similar circumstances or share the same cause"). "Permitting discovery of models that are not substantially similar is truly the equivalent of comparing apples and oranges where there are differences between the other models and the model at issue." *Tolstih*, 2009 WL 439564, at *5

(citation and internal quotation omitted). Courts should undertake a "fact specific inquiry . . . to determine the extent of the similarities or dissimilarities between models." *Id.* (citations omitted).

While the parties appear to agree that the "substantially similar" standard applies to whether particular models of mowers are discoverable, they disagree about what characteristics should be considered in assessing the issue of substantial similarity. As discussed above, Toro presents affidavit evidence comparing and contrasting the size, weight, governing safety standards, and intended use between the Z5035 and commercial mowers. Plaintiffs, on the other hand, allege that the pertinent characteristic the Court should consider is that "all ZTR mowers can roll over and all ZTR models have proven to be heavy enough to cause permanent harm or death to the operator." (Doc. 25 at 5). Plaintiffs allege that "[t]he rollover hazards faced by operators of commercial mowers is the same as that faced by operators of residential mowers" (*Id.*), and the structural differences between residential and commercial models of lawnmowers "have no bearing whatsoever on the crashworthiness of the mower in the event of a rollover. . . ." (*Id.* at 9).

In deciding whether plaintiffs are entitled to the discovery they seek, plaintiffs must show that Toro's commercial ZTR mowers are substantially similar to the Z5035 mower and therefore relevant to the issues in this case. Plaintiffs have not met their burden of presenting sufficient factual information showing there is substantial similarity between the hundreds of commercial Toro ZTR mowers on which they seek discovery and the Z5035 mower. Plaintiffs allege that "all ZTR mowers can roll over" and are heavy enough to cause injury or death in the event of a rollover, and therefore structural differences between commercial and residential mowers are irrelevant. However, plaintiffs have not presented expert testimony or evidence to support these

assertions. *See, e.g., Steede v. Gen. Motors, LLC*, No. 11-2351, 2013 WL 142484, at *10 (W.D. Tenn. Jan. 11, 2013) (finding plaintiff failed to meet burden of proof where plaintiff failed to provide citation to specific evidence and detailed analysis demonstrating substantial similarity); *Kroft*, 2012 WL 13026969, at *3 (requiring expert evidence identifying pertinent characteristics to determine substantial similarity of requested models); *Tolstih*, 2009 WL 439564, at *5 ("Conclusory generalities are insufficient to establish substantial similarity."); *Menendez v. Wal-Mart Stores E. L.P.*, No. 1:10-cv-00053, 2010 WL 3038440, at *2 (N.D. Ind. Aug. 4, 2010) (declining to compel discovery in the absence of expert opinion identifying pertinent characteristics to determine substantial similarity in different models). While plaintiffs generally reference the report of their expert, Mr. Berry, to address the dissimilarities raised by Toro's affiant, Mr. Hurst, plaintiffs have failed to direct the Court's attention to anything in Mr. Berry's report that addresses how commercial ZTR models are substantially similar to the Z5035 mower such that discovery of information on commercial models would be relevant to plaintiffs' design defect claim in this case. *See Tolstih*, 2009 WL 439564 at *5 (declining to compel discovery on hundreds of models of dehumidifiers that the defendant sold and limiting discovery to the six models that the court concluded shared the "requisite 'pertinent characteristics'"). In the absence of an expert opinion or evidence identifying the pertinent characteristics shared by both Toro's commercial ZTR mowers and the residential ZTR 5035, plaintiffs have not shown a substantial similarity between the two. The Court declines plaintiffs' request to expand the scope of discovery to Toro's commercially marketed line of ZTR mowers.

The Court adopts defendant's proposed model scope and time frame. Plaintiffs' request for information back to 1975 is necessarily based on the discovery of commercial models of Toro's ZRT mowers. Toro did not begin to manufacture its residential ZTR line of mowers until

2001. (Doc. 24 at 2-3; Doc. 26, Suppl. Hurst Aff., ¶ 3). Permitting discovery between 2000, one year before Toro began manufacturing the ZRT residential line, to June 28, 2015, the date Mr. Reising was injured, is a reasonable time frame for discovery. This would give plaintiffs 15 years' worth of information on 67 models of residential ZRT mowers.

Therefore, the Court limits the model scope to TimeCutter ZRT lawn mowers with steering levers, certified to ANSI B71.1 (residential), and manufactured between 2000 and June 28, 2015.

**IT IS SO ORDERED.**

Date: _10/29/18_

Karen L. Litkovitz
United States Magistrate Judge